[No. 6645.  Decided July 26, 1907.]

H. Constantine *et al., Respondents,* v. W. V. Caswell *et al., Appellants.*[1]

Specific Performance—Vendor and Purchaser—Contract for Trade—Performance.  Where plaintiff agreed to trade for defendant's city lots certain personal property upon which there were chattel mortgages, and agreed to secure a discharge of such mortgages, specific performance of defendant's contract to convey the lots cannot be decreed, where the plaintiff neglected to secure releases of the chattel mortgages, but allowed the personal property to be sold under foreclosure; and this would be true even if the chattel mortgage was to be discharged by substituting a real estate mortgage on the property, where plaintiff failed to meet the defendant at a time agreed upon to complete the arrangements.

Appeal from a judgment of the superior court for King county, Griffin, J., entered July 23, 1906, upon findings in favor of the plaintiffs, after a trial on the merits before the court without a jury, in an action for specific performance. Reversed.

*Shank & Smith,* for appellants, contended, *inter alia,* that respondents are not entitled to specific performance because they never tendered performance of their part of the contract. *Moody v. Spokane etc. St. R. Co.,* 5 Wash. 699, 32 Pac. 751; *Page v. Carnine,* 29 Wash. 387, 69 Pac. 1093; *Stein v. Waddell,* 37 Wash. 634, 80 Pac. 184; *Hogan v. Kyle,* 7 Wash. 595, 35 Pac. 399, 38 Am. St. 910; *Meeker v. Johnson,* 5 Wash. 718, 32 Pac. 772, 34 Pac. 148; *Wintermute v. Carner,* 8 Wash. 585, 36 Pac. 490; *Robinson v. Thoma,* 30 Wash. 129, 70 Pac. 240; *Jordan v. Coulter,* 30 Wash. 116, 70 Pac. 257; *Moran & Co. v. Palmer,* 36 Wash. 684, 79 Pac. 476; 2 Warvelle, Vendors (1st ed.), p. 829, § 13.  Specific performance being impossible the court should not have made a new contract for the parties. *Powell v. Dayton etc. R. Co.,* 12 Ore. 488, 8 Pac. 544; *Kinney v.*

[1]Reported in 91 Pac. 7.

*Hickox*, 24 Neb. 167, 38 N. W. 816; *Phinizy v. Guernsey*, 111 Ga. 346, 36 S. E. 796, 78 Am. St. 207, 50 L. R. A. 680.

*Alfred E. Parker* and *Chas. McCann*, for respondents, contended, among other things, that tender of performance was waived. *Bucklin v. Hasterlik*, 155 Ill. 423, 40 N. E. 561; *Sheplar v. Green*, 96 Cal. 218, 31 Pac. 42; *Shattock v. Cunningham*, 166 Pa. St. 368, 31 Atl. 136; *Scott v. Beach*, 172 Ill. 273, 50 N. E. 196; *McPherson v. Fargo*, 10 S. D. 611, 74 N. W. 1057. The court did not make a new contract for the parties. *Powell v. Dayton etc. R. Co.*, 12 Ore. 488, 8 Pac. 544; *Kinney v. Hickox*, 24 Neb. 167, 38 N. W. 816; *Phinizy v. Guernsey*, 111 Ga. 346, 36 S. E. 796, 78 Am. St. 207, 50 L. R. A. 680.

Root, J.—During August, 1905, respondents were the owners of certain livestock and farming utensils and a leasehold interest in a farm near North Bend, King county, Washington. The lease, executed by Mary M. Miller & Sons, a corporation, provided that the lessor should have a chattel mortgage upon the livestock and farm implements for unpaid rental. At this time there was $350 due as rent and secured by said mortgage. One O. G. Fish, of Wenatchee, also held a chattel mortgage upon said personal property. Appellants were the owners of two lots in Gilman addition to the city of Seattle. Against these lots there was a judgment of record in the sum of $44, which had been paid but not satisfied of record. There was also a lien for lumber furnished in the sum of $10.85. During said month of August these parties were negotiating for a trade whereby respondents would exchange their leasehold interest and the livestock and farming utensils for the two city lots of appellants. There was an oral understanding between the parties, but not put in any written contract, that respondents' lessor would take a mortgage on the lots after respondents received them, and release its chattel mortgage upon the stock and farming utensils. On the 1st day of September, 1905, the negotiations

resulted in a written contract that day made and signed by respondent H. Constantine and appellant W. V. Caswell, and it is conceded that their wives consented to said contract. This agreement, aside from formal parts and the description of the property, was as follows:

"That H. Constantine agrees to deliver all farming implements, separators, etc., hereinafter mentioned (itemized personal property) free from all debt, mortgages or incumbrances. Upon delivery of said implements, stock, etc., free from all incumbrances, W. V. Caswell agrees to deliver to H. Constantine a deed to property situated in Interbay, consisting of a house and two lots, known on the plat as lots 14 and 15, block 6, Gilman Addition to the city of Seattle, this deed to be a warranty deed, the property to be free from all debt, mortgage or incumbrances and taxes to be paid, this agreement to be null and void if either party fails to live up to the foregoing agreement."

Respondents alleged, and the court found, a verbal agreement to have been made after the written contract was executed, whereby it was understood that there was a mortgage to said Fish upon respondents' stock and farming utensils, and wherein it was alleged, among other things, that respondents were to pay and have said mortgage satisfied, and that the parties were to meet at the office of Mary M. Miller & Sons within a reasonable time to exchange papers, and that respondents were to leave certain papers with their attorney, Chas. McCann, in Seattle. Immediately after the signing of the written contract, respondent Constantine went to Wenatchee to secure the release of the mortgage held by O. G. Fish, and the parties hereto did not see each other again until after this suit was brought. Constantine agreed to at once obtain a release of the Fish mortgage, but did not do so until about six weeks after the contract was signed as aforesaid. Appellants claim that they were not notified of the release of this mortgage until after the present suit was commenced. On October 24, Constantine came to Seattle and Mr. Miller, secretary of Mary M. Miller & Sons, a corporation, tele-

phoned for Caswell to come to Seattle. The latter did so the following day. Constantine says that he went to the train and did not see Caswell alight therefrom, and then went to Miller's office and informed him that Caswell had not come. The latter, however, did arrive in the forenoon of said day, and called at Miller's office, waited awhile, and returned again at 1:30 in the afternoon, and remained several hours waiting for respondent Constantine, who did not again appear at the office. That evening Constantine met Miller upon the street and was informed that Caswell was in town. He told Miller that it was not necessary for him—Constantine—to remain, and that he had left the papers with his attorney, one McCann. Constantine and Caswell left Seattle that night without seeing each other. In the meantime appellants had gone upon the farm and done considerable work, in expectation that the deal would be closed up. Near the middle of December, Caswell received a letter from Constantine, which letter is not in evidence. To it he replied by letter of December 15, in which he tendered a return of all personal property to respondents and declared the agreement null and void, turned over the personal property to a neighbor for respondents and removed from the farm. The $350 rental due from respondents and secured by the mortgage to the Miller Co. thereupon was not paid, and in January, 1906, the mortgage was foreclosed and the personal property sold.

The present action was brought by respondents to enforce specific performance of the contract, alleging full performance upon their part and failure and refusal to fulfill on the part of appellants. The court made findings and conclusions favorable to plaintiffs, and entered a decree directing that, upon payment by plaintiffs to defendants, or into the registry of the court for them, in the sum of $330, the defendants should make, execute and deliver to plaintiffs a good and sufficient warranty deed for the city lots in question, and an abstract showing good title free from incumbrance, except a judgment of $44 and a lien of $10.85 upon the lots for

claims found, and surrender immediate possession thereof; that there should be declared and reserved in favor of defendants a first and specific lien on said real estate in the sum of $330; that upon execution and delivery to the plaintiffs of a deed for said real estate, the plaintiffs should pay to defendants $330, less the cost of this action; that if the defendants should fail, neglect, or refuse to execute a conveyance of said real estate as directed for a period of ten days, a deed should be executed by the clerk of said court as commissioner. From this decree an appeal is prosecuted by defendants.

Appellants contend that the oral contract alleged in respondents' reply, and as found to have been made by paragraph six of the findings, is not sustained by the evidence. It will be noticed that the written agreement calls for the transfer of the personal property free of incumbrance. As the written contract was made upon the 1st of September, and the respondent Constantine testifies that immediately thereafter he went away and did not see the appellants again until after the bringing of this action, we fail to see how, when, or where such an oral contract could have been made subsequent to the time of the making of the written contract. We are inclined to think that whatever oral agreement or understanding there was between the parties took place at or prior to the time when the written contract was executed. It was necessary for appellants to establish this oral contract in order to recover in this action. Negotiations leading up to a written contract are ordinarily presumed to culminate in said written document. It is, however, probably unnecessary for us to pass upon the question of this oral contract.

Assuming it to have been made as contended for in the reply and as stated in the findings, we are unable to see how this would justify a conclusion that respondents are entitled to the relief granted them in the decree appealed from. Instead of directing the specific performance of the contract made by the parties, this decree directs the carrying out of an arrangement which the parties themselves did not make but which

was made for them by the court. The latter was evidently acting upon the theory that this was the nearest approach possible to the contract which the parties had made. Evidently the decree was based upon the theory that the foreclosure of the chattel mortgage upon the stock and farming utensils was chargeable to appellants, in not conveying .the city lots upon which respondents were to execute a mortgage to their landlord for the unpaid rent, in lieu of the mortgage which they had outstanding upon said personal property as security for said rent. But we cannot see any legal justification for this theory. Mary M. Miller & Sons was not a party to the contract between these parties· and was not the agent of either party or privy in interest with them. The respondents could have prevented the sale of the personal property under the foreclosure proceedings, by paying the amount due their landlord or perhaps by adjusting the matter otherwise. The respondents having neglected for more than six weeks to pay and secure a cancellation or a release of the Fish mortgage, and having permitted the Miller mortgage to be foreclosed upon their property, thereby becoming unable to furnish the principal part of the consideration to be paid by them for appellants' city lots, and having failed to meet appellants at the time when they were both in Seattle for the purpose of completing their arrangements, we do not believe that a showing is made that will justify the decree made by the honorable superior court.

The same is therefore reversed, and the cause remanded with instructions to dismiss the action.

HADLEY, C. J., CROW, MOUNT, and FULLERTON, JJ., concur.